**FRANKS et al. v. SCOTT et al.**

**SAME v. BROXSON et al.**

**Nos. 2008, 2009.**

Court of Appeal of Louisiana.  First Circuit.

Oct. 4, 1939.

Kay & Kay, of DeRidder, for appellants.

Frank E. Powell, of DeRidder, for appellees Inice Moon Scott et al.

A. R. Lecompte, of DeRidder, for appellees Tom Broxson et al.

OTT, Judge.

In December, 1902, John A. Cochran obtained a patent to the NE¼ of NE¼ of Section 34 and the NW¼ of NW¼ of Section 35, Township 5, Range 13 West, in Beauregard Parish, containing 80.60 acres of land. At the time that he secured the patent to this land, Cochran was married to Lucinda Cochran, and the property accordingly fell into the community existing between them. The wife of the patentee died in April, 1903, leaving four minor children.

Without opening the succession of his deceased wife and without taking any proceedings to transfer the interest of the minors in said lands, Cochran executed the following deeds to parts of this property:

In July, 1904, a deed to J. W. Bishop covering one acre of land in the SE corner of the W½ of NW¼ of NW¼ Section 35. However, Bishop retransferred this acre to Cochran in January, 1908.

In October, 1921, Cochran executed a deed to G. T. Broxson covering this one acre of land, and the latter conveyed the one acre to G. W. Broxson, one of the defendants, in October, 1926.

In October, 1907, Cochran conveyed to M. P. Byrd the NE¼ of NE¼ Section 34 and the W½ of NW¼ of Section 35, less the one acre which at that time had been transferred to Bishop, and on January 11, 1912, Byrd executed a deed to the same property to Mrs. Emmer Broxson, wife of G. T. Broxson. And in August, 1919, Mrs. Broxson, joined by her husband, G. T. Broxson, conveyed to W. A. Moon the S½ of NE¼ of NE¼ of Section 34, and the W½ of NW¼ of NW¼ of Section 35, less 5 acres.

Mrs. Lucinda Cochran died intestate and left as her sole heirs four minor children; namely, Myrtie, Mittie, J. Thomas and Herman, all of whom were still minors when the surviving husband executed the deed to M. P. Byrd. The plaintiffs in the two suits are Myrtie Cochran, married to Thomas Franks; Mittie Cochran, the wife of Carl Franks, and Mrs. Martha L. Cochran, widow of J. Thomas Cochran, deceased, and natural tutrix of his three minor children. Herman Cochran transferred his interest in the property to Mrs. Myrtie Cochran Franks before the suits were filed.

These heirs of Mrs. Lucinda Cochran have filed suit against the heirs of W. A. Moon, who died shortly after acquiring the title from the Broxsons, asking to be recognized as owners of an undivided half interest in the property described in the deed from the Broxsons to Moon, and that said deed be cancelled from the records insofar as it purports to transfer their half interest in said property.

In a separate petition these same plaintiffs have filed a suit against the heirs of Mrs. Emmer Broxson and G. T. Broxson to recover an undivided half interest in the N½ of NE¼, Section 34, and 5 acres in the W½ of NW¼ of NW¼, Section 35 (which includes the one acre tract conveyed to G. W. Broxson by G. T. Broxson, the former being one of the Broxson heirs to the other tract as well as having a title to the one acre tract).

Both the heirs of Moon in the one suit and the Broxson heirs in the other filed pleas of ten years prescription which were sustained and the suits dismissed. Plaintiffs have appealed.

The suits were consolidated for the purpose of trial, but separate judgments were entered in each case. Both cases have been briefed together in this court, and as the issues and facts in one case are more or less relevant and determinative in the other, we will consider the cases together.

From the factual situation outlined above, it is obvious that the interest of the heirs of Mrs. Lucinda Cochran in this community property has never been divested unless prescription has cut off their rights. It is conceded that the pleas of prescription are the only issues before this court.

The pleas of prescription depend principally on the title from M. P. Byrd to the Broxsons in January, 1912. That deed included all of the property involved in these two suits, except the one acre tract which must be considered from a different factual situation. Practically the whole issue on appeal has resolved itself into the two questions of whether or not the Broxsons were in good faith when they received the title

from Byrd and whether that title was such a valid title on its face as to serve as the basis for the ten year prescription. The possession of the Broxsons from the time they acquired the property is not seriously denied, and while the possession of Moon and his heirs of the property acquired from the Broxsons in 1919 is denied by the plaintiffs, the trial judge, we think, correctly found that possession of that part was continued in the Moons sufficiently to connect their possession with their authors in title. If the possession of the Broxsons began in good faith when they acquired the title from Byrd and if that title was sufficient to serve as the basis for the ten years prescription, it is practically conceded that the pleas were correctly maintained in both suits.

The evidence shows that the Broxsons with their children and a cousin, Tom Blackman, left Vernon Parish in the latter part of 1911 on their way to Texas in search of a new home. They traveled in a two-horse wagon over rough roads with the entire family and all their earthly belongings. Sometime during the first part or middle of December they reached the Sabine River at Whitman's Ferry and found the water so high that they were unable to cross. They set up their tent and camped in the vicinity of the Ferry for several days. During their stay there waiting for the water to subside they met Mr. M. P. Byrd, who lived some two or three miles below. A trade was gotten up between Byrd and the Broxsons whereby Byrd was to sell the land in consideration for the two ponies, the wagon, tent, wagon sheet and harness. Just where and when the trade was made is a disputed point in the case.

At this time Byrd had a title to the land, but the house on the land was unoccupied. Cochran and his family had moved away a short time after the deed was made to Byrd, but the Cochrans returned in the early part of 1911 and moved into a house located on the one acre tract. There is some evidence to the effect that the Cochrans cultivated some of the fields on the Byrd land in 1911 and stored some corn and meat in some outhouses. If they did so it was no doubt with the consent of Byrd. The fact remains that the title to the land was in the name of Byrd and the dwelling house on the property was vacant when the trade was made between Byrd and the Broxsons. The Cochrans lived about a quarter of a mile from the house which was located on the property.

Plaintiffs rely largely on the testimony of Mrs. Emma Cochran, the second wife of John A. Cochran, to prove bad faith on the part of Mr. and Mrs. Broxson when they purchased the land from Byrd. She testified that the Broxsons came to see Cochran and asked permission of him to move in the vacant house on the old place; that on one Sunday before the Broxsons bought the property they and M. P. Byrd were at the Cochran home and the Broxsons and Byrd got up a trade for the place; that Cochran told Broxson that there were heirs behind the property, whereupon Broxson said he did not care anything about the heirs as he would be moved away before they got big enough to do anything. This witness further testified that the Broxsons and Cochrans visited each other quite frequently and the Broxsons knew that Cochran's first wife was dead and that she left minor children.

Of course, if the Broxsons were warned before they bought this property that the minor heirs of Cochran's first wife had an interest in the property, as testified by Cochran's wife, it could hardly be said that the Broxsons were in good faith. One of the essentials for acquiring property by the prescription of ten years is good faith on the part of the possessor. Civil Code, Article 3479. The possessor in good faith is he who has just reason to believe himself the master of the thing which he possesses, although he may not in fact be the true owner. Civil Code, Article 3451. But if there is doubt as to the validity of the title from whom he acquires, or if the person so acquiring title has knowledge of such facts as would render the title invalid, he cannot claim the benefit of a possessor in good faith. Knight v. Berwick Lumber Company, 130 La. 233, 234, 57 So. 900; Fradella et al. v. Pumilia et al., 177 La. 47, 147 So. 496.

However, the trial judge evidently did not believe all of the testimony of Cochran's second wife on this point. We cannot say that he erred in view of the testimony of G. W. Broxson and Tom Blackman, who testified that they were present when the trade for the land was made; that the trade was made down at the camp near the river, and no one else was present at the time except these two witnesses,

Byrd and the Broxsons. It is true that G. W. Broxson was only nine or ten years old at the time, but there is no reason why he could not remember an event of this kind about as well as any of the others. Moreover, one of the plaintiffs, Mrs. Myrtie Cochran Franks, was sixteen or seventeen years old when this trade was made, and she testified that she did not even know the Broxsons before they moved on the old place. If the trade had been made at her home, as her step-mother testified, it does seem that she would have known the Broxsons even though she was not at home the day that Byrd and the Broxsons are supposed to have taken dinner at the Cochran home and made the trade.

There is some testimony that the Cochran children told the Broxson children that they had an interest in the land, and that the arguments between them on this point became quite heated at times. But this evidence is not very clear, and if these arguments did occur, it was long after the Broxsons had acquired a title to the property. It remains a fact that, notwithstanding the plaintiffs continued to live in the vicinity of these lands long after they reached majority, yet they made no effort to recover their interest until Myrtie was 43 years old, Mittie 41, and the other two heirs were majors for many years without asserting any claim to the property.

We think the testimony supports the good faith of the Broxsons and that, as was held by the trial judge, it is not necessary to base our conclusions on laches on the part of plaintiffs. Nevertheless, in weighing the proof it is relevant to consider this long delay on the part of these heirs in asserting their claims. Where a claim has long been delayed in its prosecution, where there is no obstacle to its prosecution, the proof in support of such a claim must be strong, establishing the claim with more than reasonable certainty. Bodenheimer et al. v. Executors of Bodenheimer, 35 La.Ann. 1005.

Good faith is presumed and the plaintiffs have failed to show bad faith on the part of the Broxsons. Their possession not only began in good faith, but it continued in good faith and inured to the benefit of Moon and his heirs as to that part of the property purchased by Moon. The latter took as much possession of the property described in his title as he had need for. After he died, his heirs paid taxes on the property and continued their possession through an arrangement with the Broxsons. Bennett et als. v. Calmes et al., 116 La. 598, 40 So. 911.

As to whether or not the deed from Byrd to the Broxsons was sufficient to transfer the property and serve as the basis of the ten years prescription, it is contended that the deed was made to Mrs. Broxson and was not signed by her and that her husband did not concur in the act or yield his consent in writing as required by Article 122 of the Civil Code. The deed is made to Mrs. Emmer Broxson, wife of G. T. Broxson, "here present and consenting to his wife making the purchase". There is no declaration in the deed that the wife was making the purchase with her separate funds, and the property fell into the community to the same extent as though the purchase had been made in the name of the husband or in the joint names of husband and wife. While the deed is not signed by either Mrs. Broxson or her husband, it shows on its face that the property purchased belonged to the community, and it is not necessary that the purchaser sign the deed in order to show an acceptance of the purchase. Acceptance may be shown by the acts of the purchaser. The Broxsons not only moved on the property and publicly and openly claimed ownership of it, but they paid taxes on it, and subsequently sold a good part of the property with the husband concurring in the deed. This was sufficient to show an acceptance of the purchase. Balch v. Young, 23 La.Ann. 272; Allen, West & Bush v. Whetstone, et al., 35 La.Ann. 846.

The prohibition of the codal article relates to the purchase by the wife by a gratuitous or encumbered title of separate property and with her separate funds, and has no relation to the purchase of community property. The title from Byrd to the Broxsons was regular in form and was translative of property, and was sufficient to serve as the basis for the prescription of ten years under Articles 3478 and 3479 of Civil Code.

As to the one acre tract in the SE corner of W½ of NW¼ of NW¼, Section 35, it is undisputed that defendant, George W. Broxson, acquired a regular title to this property from G. T. Broxson in 1926; that he was living on and in full possession of the property when he acquired title to it and continued to occupy the

property as owner openly, publicly, and without any adverse claims of ownership, and paid the taxes regularly thereon. This suit was filed in 1938, more than ten years after the acquisition of said one acre tract by this defendant and prescription was fully accrued.

We find that the trial judge correctly sustained the plea of prescription, and we will therefore enter decrees affirming the judgment in each case.

For the reasons herein assigned, it is ordered that the judgment rendered in the case of Mrs. Myrtie Cochran Franks et al. v. Inice Moon Scott et al. of the District Court of Beauregard Parish, be and the same is hereby affirmed at the cost of appellants.

And for the same reasons hereinabove assigned, it is ordered that the judgment rendered in the case of Mrs. Myrtie Cochran Franks et al. v. Tom Broxson et al., of the District Court of Beauregard Parish be and the same is hereby affirmed at the cost of appellants.